UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WANDA KNUDSEN, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | *No. 2:14-cv-155-JHR* |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     *Defendant* | ) | |

*MEMORANDUM DECISION*[1]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal,[2] the plaintiff contends that the administrative law judge erred in finding that she could return to her past relevant work, in failing to find that such work was in fact an unsuccessful work attempt, and in assigning her a residual functional capacity ("RFC") that was unsupported by substantial evidence. I vacate the decision of the commissioner.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] The parties have consented to have me preside over all proceedings in this case, including the entry of judgment. ECF No. 17.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. This case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 11, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

requirements of the Social Security Act (for purposes of SSD) only through September 30, 2012, Finding 1, Record at 14; that she suffered from the residuals of bilateral carpal tunnel syndrome status post release procedures, the residuals of lumbar laminectomy, obesity, a history of partial ACL (anterior cruciate ligament) tear, fibromyalgia, attention deficit hyperactivity disorder, depression not otherwise specified, anxiety not otherwise specified, and dependent personality disorder, impairments that were severe but which did not, considered separately or in combination, meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.*; that she retained the RFC for light work, except that she could not climb ladders, ropes, or scaffolds, could only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, must avoid forceful gripping or grasping, repetitive wrist movements, vibratory tools, unprotected heights and uneven terrain, could understand and remember simple instructions, could execute simple tasks on a consistent schedule to complete a normal workday and week, could interact appropriately with coworkers and supervisors, but must avoid interaction with the general public, and could adapt to occasional routine changes in the workplace, Finding 5, *id.* at 15; that the plaintiff was able to perform her past relevant work as a coin box collector, Finding 6, *id.* at 18; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, from July 8, 2011, the alleged date of onset, through the date of the decision, January 9, 2013, Finding 7, *id.* The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary*

*of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Due Process

The plaintiff first contends that the administrative law judge deprived her of due process of law by instructing the vocational expert who testified at the hearing not to consider the job of coin box operator as past relevant work and subsequently finding, as the basis for denying the plaintiff's application for benefits, that the job of coin box operator was past relevant work to which the plaintiff could return. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 12) at 4-8. The argument, however, is based on an unduly strained interpretation of the transcript of the relevant portion of the hearing.

The following is the relevant excerpt of the hearing transcript:

> Q [by the administrative law judge]: If you would please . . . identify for me [the plaintiff's] past work. . . .
> A [by the vocational expert]: . . . And I have coin box collector. 292.687-010. Light duty, SVP 2.

3

> \*\*\*
> Q: . . . I'd like you to assume a hypothetical claimant . . . is [the plaintiff's] same age, possesses [her] same education[], and possesses [her] same past work. I'd like you to assume that the hypothetical claimant can perform light work, except the hypothetical claimant can never climb ladders, ropes, or scaffolds, but may climb stairs or ramps, balance, stoop, crouch, kneel or crawl occasionally. The hypothetical claimant must avoid forceful gripping or grasping, and the hypothetical claimant must avoid repetitive wrist movements. The hypothetical claimant must avoid vibrating tools in the bilateral upper extremities, unprotected heights, and irregular terrain. Hypothetical claimant can understand and remember simple instructions. My hypothetical claimant can execute simple tasks on a consistent schedule to complete a work day or a work week. My hypothetical claimant can interact with co-workers and supervisors, but not the general public. The hypothetical claimant can adapt to occasional routine changes in the work place. Do you have any questions about that hypothetical . . . ?
> \*\*\*
> Q. Okay. Given that hypothetical . . ., can the hypothetical claimant perform any of [the plaintiff's] past work?
> A. With the – it looks like the only job that would fit within this hypothetical would be that of a coin box collector. . . .
> Q. Thank you . . . . I'd like you to assume that coin box collector is not past relevant work, and based upon your testimony, that would eliminate all other jobs that you identified, is that correct?
> A. Yes. Yes.
> Q. Is there other work in the national economy that the hypothetical claimant would be able to perform?
> A. Let me – In – where is he now? Inserting machine operator. 208.685-018. SVP 2, light duty. I have around 7,300 nationally. . . . Bottling line attendant. 920.687-042.
> \*\*\*
> A: SVP 1, light duty. I have around 140,000 nationally. . . . Bakery worker. Bakery line worker. 524.687-022. SVP 2, light duty. I have around 5,000 for that DOT code nationally.
> \*\*\*
> Q Thank you . . . . I don't have any additional questions for you.

Record at 56-60. The following six pages of the transcript, *id.* at 61-67, consist of questioning of the vocational expert by the plaintiff's attorney, who was not the attorney currently representing her.

4

The plaintiff's due process argument is based on a single question, the question posed after the vocational expert testified that the only past work by the plaintiff that would fit within the hypothetical RFC posed by the administrative law judge would be the job of coin box collector. Seen in context, the question at issue merely asked whether assuming that the coin box collector job was not past relevant work would eliminate all six of the past jobs that the vocational expert had identified as constituting the plaintiff's past work. *Id*. at 56. That question cannot reasonably be construed to "instruct[] the vocational witness at hearing *not* to consider the coin box operator job as past relevant work," Itemized Statement at 4 (emphasis in original), for all purposes. It is a very specific question asked for a very narrow purpose.

The plaintiff's assertion that the administrative law judge "effectively sidestepped cross examination concerning Ms. Knudsen's ability to perform the coin box operator job" by "instructing the witness at the hearing not to consider the job[] at Step 4," *id*. at 5, misrepresents both the question and its purpose. No reasonable reader of the transcript could conclude that the administrative law judge, by asking this modified hypothetical question, "preclud[ed] cross-examination and thereby den[ied] Plaintiff due process." *Id*. Contrary to the plaintiff's characterization, the transcript does not demonstrate that the administrative law judge's question "misled" her attorney. *Id*. at 6.

If the plaintiff's statement that "the ALJ's actions in this case misled the attorney[],]" *id*., is to be more than speculation, the court would expect the attorney who represented the plaintiff at the hearing to say so, in an affidavit submitted with the itemized statement. No statement from that attorney has been submitted. In any event, even if it had been submitted, I doubt that such a misunderstanding of the usual questioning procedure for vocational experts at such a hearing would suffice to establish a constitutional violation. The plaintiff's assertion that she "had no

5

meaningful opportunity to respond" to "vocational evidence," *id*. at 7, is incorrect. The hypothetical question was understandable, and there was no apparent reason to question the testimony that, if the coin box collector job were not considered past relevant work, then a claimant with the hypothetical RFC would be unable to return to any past relevant work. Finally, it bears noting that, even under the plaintiff's own interpretation, it is the question of the administrative law judge that she attacks, not any testimony given by the vocational expert.

The plaintiff takes nothing by this argument.

### B. Fibromyalgia

The plaintiff asserts that the administrative law judge's RFC was "based on a serious misunderstanding of the limiting effects of [the plaintiff's] severe fibromyalgia impairment." *Id*. at 11. She contends that the administrative law judge also "failed to accurately assess and weigh the medical opinions of Plaintiff's treating physicians . . ., failed to accurately assess Plaintiff's credibility," and impermissibly based the RFC on his own interpretation of raw medical evidence. *Id*.

Specifically, the plaintiff contends that the administrative law judge "improperly conflated the effects of Plaintiff's fibromyalgia with those [of] her other impairments[.]" *Id*. at 11-12. She asserts that improvement in the symptoms of her knee, spine, and carpal tunnel syndrome impairments was wrongly cited as evidence of improvement in her fibromyalgia. *Id*. at 12. This argument is apparently based, *id*., on the administrative law judge's statement that "the evidence fails to show that her symptoms [from fibromyalgia], in conjunction with her other musculoskeletal impairments, physically disable her from all work." Record at 17. This sentence will not bear the weight or the interpretation that the plaintiff places upon it.

6

The statement cannot reasonably be read to demonstrate that the administrative law judge concluded that, because the symptoms of some of the plaintiff's musculoskeletal impairments had improved, the plaintiff's separate symptoms from fibromyalgia, to the extent that they were separate, had also improved. The plaintiff cites no record evidence in support of her interpretation, and her argument accordingly falls short.

The plaintiff goes on to argue that the administrative law judge "failed to consider and apply" what she characterizes as the "presumption" created by *Johnson v. Astrue*, 597 F.3d 409 (1st Cir. 2010). Itemized Statement at 12. Essentially, the plaintiff takes the position that *Johnson* requires this court to hold that, once an administrative law judge has found that a claimant suffers from fibromyalgia as a severe impairment, he or she must also accept all of the claimant's testimony about the intensity of the symptoms "usually associated with" fibromyalgia. *Id.* at 12-13. This court has rejected this argument. *Briggette v. Colvin*, No. 2:13-cv-301-GZS, 2014 WL 3548992, at *6 (D. Me. July 17, 2014).

As was the case in *Briggette*, the administrative law judge in this case was not required to accept her testimony about pain-based limitations once he found the plaintiff's fibromyalgia to be a severe impairment. *Bisbee v. Colvin*, No. 2:13-CV-95-GZS, 2014 WL 294495, at *6 (D. Me. Jan. 27, 2014). While it is certainly error to discount alleged fibromyalgia-related limitations on the basis of a lack of objective findings, *e.g., Downs v. Commissioner, Soc. Sec. Admin.*, No. 2:13-CV-02-DBH, 2014 WL 220697, at *5 (D. Me. Jan. 21, 2014), the plaintiff has not shown that this was done in this case, nor that it was not at most a harmless error.

The plaintiff has not identified any specific limitations stemming from her fibromyalgia that the administrative law judge was required to include in the plaintiff's RFC. Without more,

7

this court can only conclude that any error in this regard by the administrative law judge was harmless. *Dana v. Astrue*, Civil No. 09-514-B[-]W, 2010 WL 3397465, at *2 (Aug. 24, 2010).

Contrary to the plaintiff's assertion, Itemized Statement at 13, the administrative law judge was not required to find her testimony about the limitations caused by her fibromyalgia to be fully credible. Social Security Ruling 12-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1992 (Supp. 2014) ("SSR 12-2p") at 465 (incorporating by reference Social Security Ruling 96-7p). Evaluation of a claimant's credibility is very much a function of an administrative law judge's review of a claim of disability due to fibromyalgia. *Id.*; *see also* Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1992 (Supp. 2014) at 135-41.

Here, the administrative law judge found the plaintiff's testimony to be not entirely credible, Record at 16, for the reasons set forth in the first paragraph of the opinion on page 17 of the Record, and throughout the discussion of medical evidence in the opinion. Again, the plaintiff's failure to identify the specific limitations which she contends that the administrative law judge was required to include in her RFC as a result of her testimony, as opposed to a merely conclusory indictment of his methodology, renders futile her demand for remand on this basis.

The plaintiff also attacks, in this regard, the administrative law judge's decision to assign no weight to the opinions of Drs. Melissa Ifantides and Joe Rubin. Itemized Statement at 13. The administrative law judge referred to Dr. Ifantides as follows:

> Records dated August and September 2011 from treating physician Melissa Ifantides, D.O. show[] that the claimant requested osteopathic manipulation for her neck and back pain because it had "worked well in the past" (Exhibit B6F). Dr. Ifantides' records from November and December 2011 indicate that the claimant had received OMT on those occasions "with good results" (Exhibit B9F). . . . The claimant told her primary care provider in February 2012 that her back pain was slowly improving since her surgery (Exhibit B17F).

8

> \* \* \*
> . . . No weight is given to Dr. Ifantides' opinion that the claimant cannot sustain even a reduced range of sedentary work (Exhibit B11F), because that degree of functional limitation is not supported by the objective medical evidence and is inconsistent with the claimant's ability to meet the demands of caring for her children.

Record at 17-18.

The plaintiff asserts that "the ALJ wrote that the treating physician's assessed limitations warrant no weight because they are purportedly not supported by the medical evidence." Itemized Statement at 15. Contrary to the plaintiff's argument, this statement by the administrative law judge does not necessarily mean that he disregarded all of the plaintiff's subjective statements about the symptoms of her fibromyalgia. SSR 12-2p directs an administrative law judge to look for the following evidence of fibromyalgia: a history of widespread pain, at least 11 positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p, at 462-63. The plaintiff's argument deals only with the first of the three evidentiary elements.

The rejection of this argument disposes of the plaintiff's ensuing argument, that the administrative law judge's "only other criticism of Dr. Ifantides['] opinion" was based on her ability to care for her children, is "without merit" under *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). That is because this is not the only basis of the administrative law judge's decision to discount Dr. Ifantides' opinions.

I do agree with the plaintiff that the administrative law judge's discussion of Dr. Ifantides' opinions, quoted above, is insufficient under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) and Social Security Ruling 96-2p. Ordinarily, the plaintiff's failure to specify the opinion or opinions stated by Dr. Ifantides that would change the outcome of her claim if adopted by the administrative law judge and the record evidence supporting each would make it impossible for the court to

9

determine whether or not this error was harmless, and thus require the court to reject remand on this basis. *See, e.g., Shedd v. Colvin*, No. 1:14-cv-00086-JAW, 2015 WL 347825, at *3 (D. Me. Jan. 26, 2015).

However, in this case the specific opinions expressed by Dr. Ifantides that could change the outcome of her application for benefits are evident from her statement. *See* Record at 537-40. Social Security Ruling 96-2p requires that the administrative law judge's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2014) at 115. The administrative law judge did not meet this standard in this case with respect to Dr. Ifantides.

With respect to Dr. Rubin, the administrative law judge wrote the following:

> [T]he undersigned notes that, in February 2012, Joe Rubin, M.D., the claimant's treating psychiatrist at Counseling Services Inc., opined that the claimant was "apparently doing a thoughtful and careful job" of raising her two sons, ages seven and ten (Exhibit B12F). In August 2012, Dr. Rubin indicated that the claimant was moderately limited with respect to her activities of daily living; however he also indicated she was doing well caring for her children and attending to daily activities (Exhibit B14F).
> \* \* \*
> . . . Dr. Rubin observed the claimant to be in relatively good spirits in January 2012, with unimpaired memory and cognition (Exhibit B12F). He assessed her with mild to moderate anxiety in February 2012 and remarked upon her ability to take care of her sons in a thoughtful, caring manner despite her mental symptoms.
> \* \* \*
> No credit is given to Dr. Rubin's assessment of the claimant's work capacity (Exhibit B14F). He had only treated the claimant for a short while and his assessment, which indicates that the claimant is markedly limited in several areas of functioning, including her ability to carry out very short and simple instructions, is not supported by the longitudinal evidence.

Record at 15, 17-18.

The plaintiff maintains that the administrative law judge wrongly interpreted Dr. Rubin's opinions "solely on the basis of the effects of Plaintiff's *mental* impairments[,]" but that Dr. Rubin "explicitly affirmed" that the plaintiff's physical disabilities are major contributors to the severity of her mental impairments. Itemized Statement at 16 (emphasis in original). She asserts that the administrative law judge "impermissibly ignored the medically assessed relationship between Plaintiff's physical impairments . . . and her marked deficits related to concentration, persistence and pace." *Id*. She closes her argument with the assertion that "the ALJ's criticism of Dr. Rubin's opinion must also fail." *Id*. On the showing made, I disagree.

As was the case with Dr. Ifantides, the plaintiff fails to identify any specific mental limitations assessed by Dr. Rubin which, if adopted, would compel a different outcome, and the specific evidence in the record that supports each such limitation. Unlike the administrative law judge's treatment of Dr. Ifantides, however, the opinion complies with SSR 96-2p in its treatment of Dr. Rubin's opinions. It is true that the administrative law judge does not expressly discuss the interrelationship of the plaintiff's mental and physical symptoms, but the absence of such a discussion, standing alone, would not be cause for remand in any event.

Finally, I note that the plaintiff's allegation that the administrative law judge committed reversible error by "craft[ing] a flawed RFC finding that merely reflects the ALJ's lay interpretation of the medical evidence[,]" *id*. at 11, is erroneous. The administrative law judge explicitly based his physical RFC on the state agency consultants' opinions, Record at 18, which are expert opinions interpreting the available medical evidence.[3]

---

[3] For the reasons set forth in this section of my decision, the plaintiff's contention that the administrative law judge's hypothetical question to the vocational expert was "seriously flawed" and "inherently unreliable[,]" Itemized Statement at 10, must also fail. In addition, the decision in this case was made at Step 4, where vocational testimony

11

## C. Step 4 Analysis

The plaintiff argues that the administrative law judge's Step 4 analysis failed to comply with Social Security Rulings 82-61, 82-62, and 96-8p by failing to "adequately determine the RFC required for the coin box operator job[]" and failing to "make a meaningful comparison between the current RFC and the RFC for [the] past relevant occupation." Itemized Statement at 8. To the extent that this argument relies on the conclusory assertion that "the probative medical evidence of record established that the limiting effects of Plaintiff's physical and mental impairments were not adequately reflected in the ALJ's seriously flawed RFC finding[,]" *id*. at 9, it must be rejected, for the reasons already discussed.

Specifically, the plaintiff complains that the administrative law judge failed to "develop the record regarding prior work to determine the physical and mental . . . demands of past work[,]" and must then "compare the current RFC with the functional demands of the prior work[.]" *Id*. at 8. On this point, the administrative law judge wrote the following:

> The Dictionary of Occupational Titles describes the coin box collector occupation as light and unskilled (specific vocational preparation level 2) in nature. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

Record at 18.

Of the regulations and Social Security Rulings cited by the plaintiff, all require consideration of certain factors, but three do not require that the consideration be completely spelled out in an administrative law judge's decision. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Social Security Ruling 82-61, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 836-38. The exception is Social Security Ruling 82-62, reprinted in *West's Social*

---

is not required. *See Lewis v. Barnhart*, No. 05-3-B-W, 2005 WL 1923514, at *2 (D. Me. Aug. 9, 2005) (collecting cases).

*Security Reporting Service* Rulings 1975-1982, at 809-13, which requires that a finding that a claimant has the capacity to perform past relevant work must include a finding of fact as to the physical and mental demands of the past job or occupation. *Id*. at 813. The administrative law judge's opinion in this case cannot reasonably be read to provide that information.

The defendant suggests, Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 17, that this requirement of Social Security Ruling 82-62 has been overridden by the following sentence fragment in Social Security Ruling 06-03p: "[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision[.]" Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1992 (Supp. 2014), at 333. However, the full sentence in the Ruling, which addresses opinions from sources other than "acceptable medical sources" and is not related in any way to the Step 4 analysis, is the following: "Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions form these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. The full sentence actually supports the plaintiff's position on this issue.

There is no mention of the physical and mental demands of the coin box collector job in the administrative law judge's decision in this case. Again, however, the plaintiff, who bears the burden of proof at Step 4, must demonstrate more than this error on this appeal; she must also show that the outcome of her claim would have been different if the error had not occurred. The plaintiff makes no attempt to make this showing, and, since the vocational expert testified that the

plaintiff could perform the coin box collector job in response to the administrative law judge's hypothetical question that included almost all of the elements of the RFC later assigned to the plaintiff, Record at 59, she most likely could not make such a showing.[4]

The plaintiff is not entitled to remand on the showing made with respect to this issue.

### D. Unsuccessful Work Attempt

The plaintiff's final argument is that the coin box collector job, to which the administrative law judge found that she could return, was not past relevant work, but rather an unsuccessful work attempt. Itemized Statement at 17-18. This argument is based on the fact that the plaintiff only held the job for two months. *Id.* at 17.

Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1). 416.970(b)(1). Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities" and "work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(a) & (b), 416.972(a) & (b). The primary consideration in determining whether particular work constituted substantial gainful activity is the earnings that the claimant derived from that activity. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).

The coin box collector job has a specific vocational preparation level of 2, meaning up to and including 1 month. Coin-Machine Collector, *Dictionary of Occupational Titles* (U.S. Dep't of Labor (4th ed. 1991) § 292.687-010. Thus, in the plaintiff's case, the job lasted long enough for her to learn to do it. The administrative law judge found that the plaintiff's income from the

---

[4] At oral argument, the plaintiff's attorney contended that the vocational expert had misidentified the job at issue, which actually fit within the DOT description of the job of coin collector. This issue was not raised in the itemized statement and, therefore, will not be considered by the court. *Woodard v. Astrue*, No. 1:10-cv-327-DBH, 2011 WL 2580641, at *6 n.3 (D. Me. June 28, 2011).

14

job exceeded the monthly amount indicative of substantial gainful activity for that year, Record at 18, and the plaintiff does not challenge this finding.

Perhaps anticipating this problem, the plaintiff goes on to argue that the administrative law judge was obliged to develop the record further as to whether she stopped working at this job because of any of her impairments, in spite of the facts that the plaintiff bears the burden of proof at Step 4 and was represented by counsel at the hearing,. Itemized Statement at 17. The regulation that she cites actually states that the "work you have done will not show that you are able to do substantial gainful activity if, after working for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level[.]" 20 C.F.R. §§ 404.1574(c). 416.927(c).

Social Security Ruling 05-02, cited by the plaintiff, provides that "[w]e will not consider work we determine to be [an unsuccessful work attempt] as substantial gainful activity[.]" Social Security Ruling 05-02, reprinted in *West's Social Security Reporting Service* Rulings 1983-1992 (Supp. 2014) at 312. The plaintiff relies on language from this Ruling, which is included in the following excerpt:

> When we consider why your work effort ended or was reduced to the non-SGA level, we do not rely solely on information from you. Therefore, if we do not already have impartial supporting evidence, we will seek confirmation from your employer. If the information from your employer is inconclusive or is not available, we may seek confirmation of the reason you discontinued or reduced your work with a physician or other medical source.

*Id.* at 314.

This paragraph cannot reasonably be read to require the administrative law judge to contact the plaintiff's employer for the coin box collector job to determine whether she was forced to leave

15

that job by one or more of her impairments. Rather, it informs the claimant that the administrative law judge will independently confirm the claimant's assertion that she was forced to leave the job in question by an impairment, if the record does not already contain impartial evidence supporting that assertion. Here, the plaintiff does not cite any record evidence that she ever made such an assertion. *See Bard v. Astrue*. No. 1:12-cv-22-NT, 2012 WL 5258197, at *2 (D. Me. Sept. 28, 2012).[5] Neither of the cases cited by the plaintiff as authority for her interpretation of the Ruling actually supports her position.

In *Cheney v. Commissioner of Soc. Sec.*, Civil Action No. 5:10-CV-174, 2011 WL 1839785 (D. Vt. Apr. 19, 2011), the claimant's attorney "specifically rais[ed] the 'unsuccessful work attempt' issue before and at the administrative hearing." *Id*. at *6. The plaintiff does not suggest that she provided any such notice to the administrative law judge in this case. In addition, there was evidence in the record in the *Cheney* case that suggested that the claimant's past work might have ended as a result of the claimant's mental illness. *Id*. at *7. Again, the plaintiff here has not cited any such evidence.

In *Lenczewski v. Astrue*, No. 08-CV-0862-A, 2010 WL 2472548 (W.D.N.Y. June 15, 2010), the court observed that "[f]or work efforts lasting less than three months, the claimant only needs to show that the work ended due to his impairment[]" in order to qualify for the exception to the general earnings test for an unsuccessful work attempt. *Id*. at *3. The court rejected the plaintiff's attempt to show that several jobs lasting less than three months were unsuccessful work attempts, and noted that

---

[5] No mention of the reason for leaving the coin box collector job, which was followed by six other jobs, is included in the plaintiff's work history report. Record at 272. Nor does it appear in the letter dated October 10 from the plaintiff's then-attorney to the administrative law judge or the letter dated January 22, 2013, from that attorney to the Appeals Council. *Id*. at 305-08. In addition, the plaintiff worked as a coin box collector in 1999, *id*. at 272, long before the date on which she alleges her disability began, July 8, 2011. *Id*. at 11.

16

> [t]he [Social Security] Act requires more than just statements from the plaintiff to establish the reason(s) employment was ended. The ALJ must seek corroboration of these statements from subjective evidence or statements obtained from the claimant['s] employers.

*Id*. at *5. This statement is consonant with my interpretation of the applicable regulation, as set forth above, rather than the plaintiff's version. *See also, e.g., Shafer v. Colvin*, No. 13-C-0929, 2014 WL 1785343, at *12 (E.D. Wisc. May 5, 2014) (in making unsuccessful work attempt determination, "the SSA does not rely solely on information from the claimant but rather will ordinarily seek confirmation from the employer."); *Nadeau v. Astrue*, No. 07-CV-203-PB, 2008 WL 924525, at *5 (D.N.H. Apr. 2, 2008) (unsuccessful work attempt argument rejected where claimant did not allege that the employment was cut short by alleged impairment and alleged date of onset of impairment was long after he stopped working at job at issue).

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED** and the case remanded for further proceedings consistent with this opinion.

Dated this 1st day of April, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge